Good morning, Your Honors. May it please the Court, my name is Brendan White. I represent Miles Bailey on this appeal. The issue is simple and straightforward here. Rule 11d2 requires that the Court inquire of the defendant at the time of the plea whether the plea was in fact voluntary, by personally asking the defendant whether the decision to plead guilty was the result of any threats, force, coercion, promises, etc. Mr. Bailey, I thought two people were ahead of me. What the fuck, man? Mr. Bailey Hello? Judge Bailey Hello? I'm sorry, I just, uh, can we talk for a moment here? Mr. Bailey No, I think someone else spoke up who wasn't supposed to, but go ahead. Judge Bailey Oh, I apologize. There was no question from the Court? Mr. Bailey No, no, that wasn't the three judges. I think someone else was talking, but you can proceed. Judge Bailey Of course. Thank you, Your Honor. I'm sorry about that. Here, I don't think there's any real debate as to whether the rule was followed. It was not. The judge did not ask Mr. Bailey whether his decision to plead guilty had been the result of any threats, coercion, force, etc. He did ask some generalized questions to counsel, but this Court has previously determined in Powell that, and the rule obviously states on its face, that the questions can't be addressed to counsel. They must be addressed to the defendant personally, and Mr. Bailey's substantial rights were affected here because the evidence shows overwhelmingly that this case would have gone to trial. The plea took place literally on the morning of trial. Everybody expected it to go to trial, and it came as a surprise. Judge Carney Could you please clarify, this is Judge Carney, could you please clarify something for me? When your client first attempted to withdraw his plea at sentencing after having entered it, so several months had passed, right? He initially, neither he nor his counsel mentioned threats or coercion as a reason for the guilty plea initially. And there was, I guess during sentencing, there was a question of inconveniencing witnesses and other concerns, but I didn't see how the District Court was directly alerted to the issue that he later mentioned as having decided to plead guilty because he was threatened that his father and daughter were going to be charged as well, that someone who he later identified as a Thomas Kubik had said that. This is after a lot of back and forth still about his plea, the voluntariness of his plea, and I don't think the government can test or that you with a question whether his plea was prompted by any threats or any coercion. But the record here seems less than compelling about that he would have in fact not pleaded guilty were not for such threats, if such threats were indeed made. And the District Court had alluded to the idea of voluntariness on a number of occasions. There was a long delay, he was counseled throughout. I find it difficult to accept this version of events, and I don't think the District Court was really alerted to it. How am I misconceiving this situation? Why is this a wrong take? Well, Your Honor, I do think you have to take the context, particularly at the sentencing proceeding into mind. First of all, it is clear, I believe the record does make clear enough that my client had been asking his attorney to make a motion to withdraw the guilty plea. That counsel was unwilling, and I understand the dynamics here, of course, but counsel did not make any sort of reference to what was an obvious error on the face of the plea transcript that Rule 11 had not been followed with respect to the questions regarding the voluntariness of the plea. Counsel, let me put the question that Judge Carney put in a slightly different way. If your client or his counsel had at that point said, I would like to withdraw the plea because I believe that I was threatened, and I was threatened, and no one told me that if I was threatened, I should have said something, should have known, been able to avoid it, and the threat was from this person. Then, even though the person may have been somebody who his own counsel had gotten, that might not matter, and that might not matter because had the court informed him about threats, he might have reacted differently and not pled by what he thought was a threat, even though it wasn't made by the government. The threat didn't need to be made by the government if he wouldn't, if he could argue plausibly that he would not have pled had he known about threats, but he didn't make any of those arguments. I think there is an argument that you could be making, but I don't think it was made before the district court, and that's what I think Judge Carney was saying to you. I understand, Your Honor, and I certainly agree with your characterization with respect to the threat. It undoubtedly, in my view, could come from either the government directly or from somebody nominally on the defendant's side. I don't think that makes a difference with respect to the nature of the threat. With respect to the more direct procedural question here, we're talking about a criminal defendant who, although he obviously was represented by just as obvious that at that point, his relationship with his attorney had broken down completely. Counsel did not want to make the motion. It's not clear that they were really of the same mind. Counsel obviously wanted sentencing to go forward, and I submit to you, Counsel wanted the plea to go forward. The defendant did not. Thank you, Your Honor. The defendant was doing all he could. The judge essentially cut him off. My client had asked right at the outset of the plea of the sentencing proceeding, I need a new attorney. I want to make a motion to withdraw my plea, and the judge shut him down, told him, look, we've dragged this out long enough, and for all intents and purposes said, I don't want to hear this anymore. And what was Mr. Bailey supposed to do at this point? He's about to be sentenced by this very same judge. It's not the time to get in an argument with the court. He let the court know that he had not only what he believed to be a valid argument to withdraw the plea, but that he didn't really want his current attorney making that because their relationship had broken down. And for what that would have constituted a basis to withdraw the plea. Several times you've said it was an obvious error. I don't believe rule 11 requires that the judge specifically ask, you know, anything specific along those lines, but the rule requires that the district judge make a finding that it was voluntary. So I'm not sure. Yeah, I mean, look, I think the standard allocution includes the questions that you're suggesting, but I don't believe that precise language is required by the rule. May I address that, Your Honor? Yes, I do disagree. The rule itself states that the court must address the defendant personally in open court, which I imagine is open to some sort of interpretations, but I would say the clearest one is that he should personally ask the defendant. And in both United States versus Powell and United States versus Roseo, both of which are cited in my brief at page 22, the courts there noted that the court had failed to follow rule 11 by asking the questions of counsel rather than asking them of the defendant personally. So I do believe the comment. You have time for a rebuttal. We'll hear from the government. May it please the court, Karina Schoenberger for the United States. Mr. Bailey has not identified an error here that would warrant overturning his conviction or his sentence for this nearly $2 million fraud. With respect to the plea colloquy, the government doesn't dispute that there was not a verbatim following of rule 11 here, but Mr. Bailey has not sustained his burden of showing that his substantial rights were affected because he has not shown a reasonable probability that he wouldn't have pled guilty if the judge had specifically asked the question if he has been threatened. The scenario that Mr. Bailey posits on appeal is that if the judge had asked that question, then Mr. Bailey would have said yes, he was threatened, and the government would have clarified that he was not, and then he would have decided to go to trial. But that doesn't take into account the person who made the alleged threat, which was an investigator for Mr. Bailey's own defense team. Now, counsel, counsel, why does that make a difference if he had known the threats counted, whether the threat, the suggestion about that was made by his counsel or not? Yeah, I agree that it was made, and that the government was not responsible. There's no evidence that the government was responsible for it. But why isn't it plausible to say that had he been told, look, your plea is not valid if you have been threatened, that he might have said, oh, my God, I did make it because I felt threatened because I thought they would go after my father, my daughter, you know, various people. And the question is, was the plea voluntary, or was it affected by that? So I don't see how the fact that the knowledge about the threat that they could do that came apart from the government is determinative. I'm not sure he raised it, but the government in its brief makes most about who did it, and I agree it wasn't the government, but I'm not sure that's determinative. Here's why it makes a difference, Your Honor. It doesn't make a difference if it was the government or if it was defense counsel as to whether Mr. Bailey perceived it as a threat. And certainly if he felt that he was threatened to the point that he had no choice whether to make the plea, then that could impact the district court's determination as to whether the plea was voluntary. But here, what Mr. Bailey says later at sentencing is, I decided to plead guilty because I thought if I went to trial that my family members would be charged. So the way the government interpreted that sentence was that he had received a threat saying he would be punished with these additional charges if he went to trial and clarifies the government didn't make this threat. If at the plea allocution he had said, yes, I'd been threatened, then the district court would have inquired further about what that was to determine whether or not it was a voluntary plea. If it came to light that this was something that he had heard from his own defense team, then he would have, should have been made to understand that charges don't come from the defense team and that perhaps what was being communicated to him was that if he went to trial where more evidence was developed, there was a risk that his family members could be charged. And in fact, that was a risk. The pre-sentence investigation report shows that his family members were involved in one way or another with this scheme. So if his consideration for why he wanted to plead guilt or not was based on whether or not his family members might be charged, that risk would still be there. And so there's no, even if it was clarified for him, no, you haven't been threatened, that clarification wouldn't have changed his analysis of whether or not it was in his best interest to plead. So that is why it hasn't been shown that there's a reasonable probability that he wouldn't have pled even if the judge had asked this specific question. So the- Thank you, counsel. That's very helpful. Unless there's further questions about the plea colloquy, I can turn to the motion to withdraw the plea. And there were no real grounds identified for wanting to withdraw the plea. The letter that defense counsel submitted to the district court just said that his client had asked him to withdraw the plea. And then he says, I reviewed the entirety of my file, and I don't see any basis for a withdrawal except maybe theoretically ineffective assistance of counsel. And then when Mr. Bailey is given an opportunity to address his request in front of the district court, Mr. Bailey turns immediately to wanting an adjournment and a new attorney, and he doesn't identify any grounds for withdrawing his plea. So there was certainly not any fair or just reason presented to the district court that would allow it to grant the motion to withdraw, and there was no abuse of discretion in denying that. Finally, with respect to Mr. Bailey's sentence, it should be affirmed as both procedurally and substantively reasonable for the reasons that are outlined in the government's brief. Both of the enhancements that were applied were properly applied, and the district court had no obligation to compare Mr. Bailey's sentence to those received by his co-conspirators. And even if he had, it would have been appropriate for Mr. Bailey to receive a longer sentence given he was responsible for such a greater amount of the loss. And finally, with respect to the substance of the sentence, this was a within-guideline sentence, and neither before the presented about why the district court should have varied outside of the guidelines. If there are no other questions, the government thanks the court. Thank you. We'll hear the rebuttal. Mr. White? Sorry, I forgot to unmute myself. Just going back to the sentencing proceeding again, I just don't believe it's reasonable to expect in a circumstance in which the defendant is at odds with his own attorney about what course they should pursue, that the defendant has to follow the preservation and argument rules that an attorney might have followed. Particularly in a case like this where the judge was saying, now, now, Mr. Bailey, you know, enough of this. We're going forward. I'm not giving you a chance to file a motion. He did everything he could to let the court know what had happened. He could have made that effort seven months earlier though, right? I mean, that's the problem. He waited seven months to make the request. He did advise the court that I had asked. Give me a moment. I do have it here, but I believe it was on page four, page three of the sentencing transcript. He advises the court that he had told his attorney several months earlier that he wanted to file a motion to withdraw the plea. One minute. One minute. Counsel? Yes, Your Honor. What do you make of a government's argument that if this had been said, what would have been said in open court was that going to trial did in fact entail a risk that his relatives would be charged? Because it did. And that that wasn't a threat. It was just a statement of fact, which is what, not so well, the man who advised his counselor said. And that under those circumstances, there's no reason at all to think that he wouldn't have pled guilty precisely for the reasons he did plead guilty. But he did want to protect them from that risk. Well, Your Honor, that unfortunately does throw us somewhat into the world of current events with another highly publicized case. And people look at that type of thing differently. We all, if I can speak for everybody, tend to take the euphemistic view that, well, he received that particular benefit by pleading guilty. A lot of people look at it differently. And Mr. Bailey evidently did look at it differently, that he is being forced or threatened to plead guilty by the risk that a family member could be charged. And again, not to overemphasize this, but this case was about to go to trial. This is very different from a case in which a defendant might regret his guilty plea later on. He was ready to go to trial. He had a defense. It was a viable one. The other two lead defendants were apparently the masterminds of this. And as I understand it, were going to testify against him. Maybe they would not have been credible. He had a shot of winning this case. And he clearly wanted to go to trial. Even at the pre-plea colloquy, it's evidence that, you know, there was a lot of back room something going on there to get him to change his mind. We have your honor. You want to do a last thought? You want a last thought? Go ahead. I think I've made my point clear. Thank you. All right. Thank you both. The court will reserve decision.